UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE ALFONSO ARIAS GARCIA,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondents.

No. 1:26-cv-08639 DC SCR

ORDER AND

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner, a citizen and national of Honduras, arrived at the Hidalgo (Texas) Port of Entry on August 16, 2023, with a scheduled CBP One appointment to seek asylum. ECF No. 16 at 16 (Form I-213). Immigration officials issued him a Notice to Appear ("NTA") administratively charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (noncitizen not in possession of valid entry document) and granted him parole into the United States. Id. Petitioner relocated to Des Moines, Washington, where he worked in construction and joined a church. Declaration of Jose Alfonso Arias Garcia ¶ 4, ECF No. 1-2 at 2-3. Petitioner was arrested for domestic violence on February 24, 2024, but the charges were dismissed. ECF No. 6.

On August 3, 2026, Immigration and Customs Enforcement ("ICE") conducted a traffic

stop of Petitioner's vehicle and placed him under arrest. According to the Form I-213, the agents were part of ICE's Seattle Fugitive Operations team and looking for another individual identified as a Colombian national. ECF No. 16 at 20-21. Petitioner is currently detained at the California City Correctional Center within this judicial district. See ECF No. 5 (Notice of Transfer).

Petitioner initiated this action in the Western District of Washington on October 7, 2026. ECF No. 1. The case was transferred to this Court on October 19, 2026.[1] ECF No. 7. The petition raises a single procedural due process claim challenging Petitioner's re-detention without written notice and pre-deprivation hearing before a neutral decisionmaker. ECF No. 1 at 16. Petitioner seeks immediate release and a permanent injunction enjoining his re-detention "absent written notice and a hearing before a neutral decisionmaker where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no alternative conditions would mitigate those risks." Id. at 17.

Respondents maintain that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1), and that to hold otherwise "contravenes the 'entry fiction'" doctrine, under which "an alien who is physically present but has not been lawfully admitted into the country is 'legally considered to be detained at the border and hence as never having effected entry into this country.'" ECF No. 16 at 2-4. Respondents add that "under longstanding precedent," § 1225(b) detainees like Petitioner have "only those rights regarding admission that Congress has provided by statute," and that "the Due Process Clause provides nothing more." Id. at 6 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020)). Even assuming Petitioner retains a protected liberty interest, Respondents argue that the test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) does not show that Petitioner "requires a bond hearing." Id. at 6.

---

[1] In light of this transfer, the undersigned grants Petitioner's motion for administrative relief to substitute Christopher Chestnut, the California City Warden, as Respondent. ECF No. 18. "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]" Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); see also Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024) (affirming the "application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees.").

Petitioner filed a brief reply arguing that Respondents appear to misconstrue his petition as seeking a bond hearing and did not respond to the merits of his procedural due process challenge to his unlawful re-detention. ECF No. 17 at 1-2. Petitioner further argues that the Supreme Court's ruling in Thuraissigiam is inapposite because it does not address the issue of whether a noncitizen present within the United States can seek release from detention pursuant to the Fifth Amendment. Id. at 4-5. He reiterates that he has "accrued a significant and cognizable liberty interests" since his parole into the United States in November 2023. Id. at 6.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step

examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing. The parties do not dispute that 8 U.S.C. § 1225(b)(1)(B)(ii) governs Petitioner's detention.

**III. Due Process Analysis**

**A. Petitioner Has a Protected Liberty Interest**

It is undisputed that immigration officials paroled Petitioner into the United States in

November 2023. While the record does not specify the exact manner of release, the typical statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Thus, the undersigned assumes, without deciding, that Petitioner is a humanitarian parolee and joins the majority of judges in this Circuit who have found that such parolees possess a protected liberty interest in their continued freedom from detention. See D. L.C. v. Wofford, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (finding the petitioner was likely to demonstrate a protected liberty interest in his continued release following his parole and collecting cases); Torres v. Hermosillo, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (same); Noori v. LaRose, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (likening the petitioner's liberty interest in humanitarian parole to that of a criminal parolee under Morrissey).

Respondents spend a great deal of their answer defending their assertion that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). That may be the case, as applicants for admission may be temporarily released on humanitarian parole "regardless of [whether § 1225(b)(1) or (b)(2)] authorizes their detention[.]" Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing § 1182(d)(5)(A)). But "[t]he court . . . need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme." Cajina v. Wofford, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025); see also D. L.C., 2026 WL 25511, at *4 (finding the petitioner possessed a protected liberty interest even assuming, arguendo, that he was a humanitarian parolee processed under § 1225(b)).

Even assuming Petitioner is detained under § 1225(b)(1), the undersigned finds no merit to Respondents' argument that the "entry fiction" doctrine and the Supreme Court's Thuraissigiam precedent foreclose the existence of a protected liberty interest here. The Ninth Circuit recently discussed the entry fiction in Padilla v. United States Immigration & Customs Enforcement, -- F.4th --, 2026 WL 2822044 (9th Cir. Sept. 21, 2026), which concerned the question whether Thuraissigiam precluded non-citizens apprehended after unlawfully entering the

United States from seeking bond hearings under procedural due process. While the Ninth Circuit acknowledged that the entry fiction "limit[s]" the "due process rights regarding admission … to 'whatever the procedure authorized by Congress is[,]'" for non-citizens "'on the threshold of entry,'" Padilla, 2026 WL 2822044, at *13 (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)), it did not find that the entry fiction limits detention-related claims. Moreover, after an extensive review of historical practice going back to the Magna Carta, Padilla found that "the government's strictly circumscribed detention authority, a pillar of our common law tradition for almost a millennium, stands in contrast to the political branch's 'plenary authority to decide which aliens to admit.'" Id. at *19 (quoting Thuraissigiam, 591 U.S. at 139). Padilla thus also held that "Thuraissigiam was an admission, not a detention, case." Id.; see also Diaz-Alfonso v. Warden, California City Immigr. Processing Ctr., No. 1:26-CV-07682-DC-CKD, 2026 WL 3060522, at *1 (E.D. Cal. Oct. 13, 2026) (holding that the entry fiction's "limitation on Petitioner's due process rights relate to his *admissibility*, not his *detention*") (emphasis in original). Accordingly, the undersigned finds that Petitioner possesses a protected liberty interest in his continued freedom from immigration detention.

**B. The Mathews Analysis**

The District Judge assigned to this case has found that in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the Due Process Clause requires it provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered. See Selis Tinoco v. Noem, 818 F. Supp. 3d 1141 (E.D. Cal. 2025) (granting motion for temporary restraining order and immediate release of the petitioner based on his likelihood of success on the merits of his due process claim); Labrador-Prato v. Noem, 815 F. Supp. 3d 1113 (E.D. Cal. 2025) (same); D. L.C., 2026 WL 25511 (same); Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, 2026 WL 309563, at *6-*7 (E.D. Cal. Feb. 5, 2026) (granting motion for temporary restraining order and habeas petition as to the petitioner's due process claim).

Consistent with the Court's reasoning and rulings in these substantively identical cases,

the undersigned finds that the Mathews factors on analysis show that Petitioner's re-arrest without pre-deprivation notice and hearing violated his Fifth Amendment right to procedural due process. The undersigned finds Respondents' counter-Mathews analysis unpersuasive. See ECF No. 16 at 6-7. As Petitioner notes, Respondents appear to misconstrue his procedural due process claim as seeking a bond hearing as a remedy for prolonged detention rather than challenging his re-detention without pre-deprivation procedures. Finally, as it is undisputed that Petitioner's domestic violence charge was dismissed, and Respondents have not identified any exigent circumstances warranting the revocation of his parole without pre-deprivation procedures, the undersigned finds that the appropriate remedy is immediate release. See Velasquez Leon v. U.S. Attorney General/ICE, No. 1:26-cv-07221-DC-CKD, 2026 WL 2982950, at *2 (E.D. Cal. Oct. 5, 2026) (finding release appropriate for noncitizen detained without a pre-deprivation bond hearing where the respondents noted his earlier arrest "was disposed of with 'no action,' but provide[d] the court with no argument as to how that dropped charge ha[d] any bearing on [the] case").

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for administrative relief to substitute Christopher Chestnut, Warden, California City Detention Facility, for Bruce Scott, Warden Northwest ICE Processing Center, as a Respondent (ECF No. 18) is GRANTED.

2. The Clerk of the Court shall update the Docket accordingly.

Additionally, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED on its sole procedural due process claim.

2. Respondents be ordered to IMMEDIATELY RELEASE Petitioner JOSE ALFONSO ARIAS GARCIA on the conditions of supervision in place at the time of his re-arrest on August 3, 2026.

3. At the time of release, Respondents must return all of Petitioner's documents and possessions.

4. Respondents be ordered to file a notice certifying compliance with this provision

of the Court's Order within two (2) court days from the date of this Order.

5. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

6. The final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7. The Clerk of Court be directed to:

a. Serve a copy of any release order on the California City Correctional Center; and

b. Enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court’s order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 4, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE